UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARBELLA MUTUAL INSURANCE CO.,<br>*as subrogee of Kathleen Chapin and*<br>*Timothy Chapin*<br><br>Plaintiff,<br><br>v.<br><br>FIELD CONTROLS, L.L.C., and<br>PACIFIC ELECTRONICS CORP.<br><br>Defendant(s). | Civil No. 16-10656-LTS |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 90, 91) AND MOTION IN LIMINE (DOC. NO. 92)

April 4, 2019

SOROKIN, J.

This is a products liability dispute arising out of a failure in the heating system of Kathleen and Timothy Chapin's home which was insured by Plaintiff Arbella Mutual Insurance Company ("Arbella"). Arbella brought suit against Defendants Field Controls, L.L.C ("Field Controls") and Pacific Electronics Corporation ("Pacific Electronics") for the cost of repairing the damage. Arbella's complaint alleged a single count of negligence against each of the two defendants. Doc. No. 1-1. The defendants each asserted crossclaims against the other for contribution and indemnification. Doc. Nos. 8, 21. At the conclusion of discovery, Field Controls and Pacific Electronics moved for summary judgment. Doc. Nos. 90, 91. Additionally, Field Controls moved to exclude the opinions and testimony of Arbella's expert. Doc. No. 92. For the reasons set forth below, the motions for summary judgment are DENIED IN PART AND ALLOWED IN PART, as described herein. The motion in limine is DENIED.

I.    BACKGROUND

In February 2015, the heating system at the Chapins' home in Chatham, Massachusetts shut off and stopped operating, causing the pipes to freeze.  Doc. No. 115 at 1-2.  The frozen pipes, in turn, caused water damage to the home.  Id. at 2.  The Chapins submitted a claim to their insurance company, Arbella, which paid approximately $200,000 to repair the home.  Id. Arbella alleges that the heating system failed because of a faulty vent damper which was manufactured by Field Controls and Pacific Electronics.

"A vent damper is installed on boiler vent ductwork to limit the amount of residual heated air that can exit a dwelling through the boiler vent, and also prevent cold air from entering the dwelling."  Id. at 4.  Essentially, when the thermostat in the home calls for heat, "the damper's motor assembly is energized, and it rotates the damper from the 'closed' position to the 'open' position," which "allows products of combustion (such as carbon monoxide) to exit the dwelling during boiler operation."  Id. at 4-5.  When the thermostat no longer calls for heat, the damper's motor assembly is again energized and it rotates the damper to the "closed" position, preventing outside air from coming into the home through the vent ductwork.  Id. at 5.  When a vent damper fails to operate properly, it is designed to remain in a "closed" position, which "prevents the boiler from calling for heat, which prevents potentially toxic gases (carbon monoxide) from building up in the home."  Id.

The vent damper in the Chapins' home was manufactured by Field Controls.  Id. at 8. The motor assembly inside the vent damper was manufactured by Pacific Electronics.  Id. at 6. On multiple occasions, Arbella's experts, John Certuse and Victor DaCosta, tested the vent damper from the Chapins' home.  See Doc. No. 104-6 at 3.  Certuse offers an expert report in which he concludes that "the Pacific Electronics J206 motor to the Field Controls GVD 5 vent

damper failed because of an internal manufacturing defect . . . and that this defect existed prior to the time it left Pacific Electronics' factory and Field Controls' assembly plant." Id. at 19. Field Controls moved to exclude Certuse's and DaCosta's opinions and testimony. Doc. No. 92. Arbella opposed. Doc. No. 106.

Both Field Controls and Pacific Electronics also moved for summary judgment against Arbella. Doc. Nos. 90, 91. Arbella opposed. Doc. Nos. 101, 103. Additionally, Field Controls moved for summary judgment against Pacific Electronics. Doc. No. 91. Field Controls argues that "[e]ven if Plaintiff could establish a manufacturing defect existed in the J-206 motor, Pacific Electronics, as the motor manufacturer, owes Field Controls common law indemnity" because Field Controls is without fault. Doc. No. 95 at 9-10. Pacific Electronics opposed. Doc. No. 99.

The Court heard argument on each of the pending motions on March 25, 2019.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute "is one on which the evidence would enable a reasonable jury to find the fact in favor of either party." Perez v. Lorraine Enters., Inc., 769 F.3d 23, 29 (1st Cir. 2014). "A 'material' fact is one that is relevant in the sense that it has the capacity to change the outcome of the jury's determination." Id. (citation omitted). The Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). However, the Court must ignore "conclusory allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009).

III.     DISCUSSION

At the hearing and in its opposition to the motion for summary judgment, Arbella advanced five theories premised on three different causes of action upon which it believes it can recover: (1) negligent manufacturing defect, (2) breach of the implied warranty of merchantability because of a manufacturing defect, (3) negligent failure to warn, (4) breach of the implied warranty of merchantability because of a failure to warn, and (5) chapter 93A.  As to the last four theories, the defendants contest Arbella's right to advance them at this stage of the litigation on grounds of fair notice.  As to all five theories, the defendants contest the merits and argue that Arbella cannot survive summary judgment on any of the five theories.  The Court considers each theory in turn.

A.  Negligent Manufacturing Claim

Arbella's complaint asserts a single count of negligence against each defendant.  Doc. No. 1-1.  At the hearing, the defendants conceded that they had fair notice that Arbella was pursuing a negligence claim premised on a theory that the motor inside the vent damper had a manufacturing defect attributable to one or both defendants' negligence.  Accordingly, the Court considers the merits of the negligent manufacturing defect theory, beginning with the elements of this claim under Massachusetts state law.

"The basic elements of a products liability action founded on negligence are duty, breach of duty, cause in fact, and proximate cause." Colter v. Barber-Greene Co., 525 N.E.2d 1305, 1313 (Mass. 1988).  Liability is imposed "when a product's manufacturer or seller has failed to use reasonable care to eliminate foreseeable dangers which subject a user to an unreasonable risk of injury." Id.  "A defect from manufacturing, as opposed to design, occurs when a product differs from identical products issued from the same manufacturer." Wasylow v. Glock, Inc.,

975 F. Supp. 370, 377 (D. Mass. 1996). "In an action based on negligence, the plaintiffs have the burden of proving that a defect attributable to the manufacturer's negligence caused the injury." Corsetti v. Stone Co., 483 N.E.2d 793, 805 (Mass. 1985) (quotation marks and citations omitted). "Where, as here, the accident occurs after the defendant has surrendered control of the instrumentality involved, it is incumbent upon the plaintiff to show that the instrumentality had not been improperly handled by himself or by intermediate handlers." Id. at 805-06.

In this case, whether Arbella has set forth sufficient facts to survive summary judgment on the negligent manufacturing claim depends initially on whether the Court allows Field Controls' motion to exclude the opinions and testimony of Arbella's experts. Thus, the Court first resolves the motion in limine, Doc. No. 92.

On September 7, 2018, Arbella's expert, in the presence of representatives of defendants, conducted a "destructive" examination of the failed vent damper. Doc. No. 115 ¶ 19; Doc. No. 104-6 at 3. Based upon his review of the discovery (including the deposition of one of Field Control's engineers) and his examination of the vent damper and motor from the Chapins' home (both exterior and interior after disassembling the motor), he opined that the motor "had not been opened or manipulated since it left Pacific Electronics Chinese manufacturing facility." Doc. No. 104-6 at 19.

For purposes of making a comparison, Arbella's expert obtained a Pacific Electronics motor of the same make and model as the Chapins' motor (Pacific Electronics, J206). Id. at 4. For ease of reference, this is called the "comparison motor." The comparison motor was made in 2006 and was estimated to have been in service until 2018, for a total of 4233 days. The Chapins' motor, made in 2004, was estimated to have been in service for 3881 days before it

failed. [1]  Id.  Based on an internal and external examination of the comparison motor, Arbella's expert concluded it was operating properly, and he provided experts from both Pacific Electronics and Field Controls access to both motors during the September 2018 destructive testing.  Id.  The record reveals nothing further regarding the conditions under which the comparison motor operated, such as operating environment or frequency of use.  Arbella's expert reviewed no design specifications for the J206 motor and the record reveals no such specifications.  However, he compared the characteristics of the comparison motor to the Chapins' motor and identified a number of differences which he concludes contributed to the motor's failure.  Id. at 18-19.  Additionally, when the expert placed the comparison motor into the Chapins' vent damper, the vent damper functioned.  From the foregoing, Arbella's expert opined that the comparison motor was an exemplar of a J206 motor.

Field Controls asserts that this method is not scientifically reliable because Arbella's experts did not have the design specifications with which to compare the motor from the Chapins' home.  Doc. No. 97 at 8.  Thus, Field Controls argues, without these design specifications, it is impossible to know whether the comparison motor was a true exemplar (meaning that it followed the design specifications).  Id.  Additionally, Field Controls argues that the lack of evidence in Arbella's expert report about the conditions under which the comparison motor ran before being used as a comparison negate the conclusion that it was a true exemplar against which to evaluate the motor from the Chapins' home.

These arguments go to weight, not admissibility.  Arbella has offered sufficient facts, which the Court accepts as true for purposes of summary judgment, upon which a reasonable

---

[1] The President of Pacific Electronics, James Gorman, testified in his Rule 30(b)(6) deposition that no design or manufacturing changes were made in the relevant time period.  Doc. No. 94-6 at 3.

jury could conclude that the comparison motor used was in fact a true exemplar and was therefore a proper basis against which to evaluate the motor from the Chapins' home.[2] The strength and credibility of the use of the comparison motor as an exemplar is a question for trial.

Based upon his examination of the Chapins' motor and the comparison motor, Arbella's expert rendered the following opinion:

> I am of the opinion that the inconsistencies in the rotor dimensions of the subject and exemplar rotor are attributed to either the failed rotor being fabricated incorrectly or, that the rotor was intended for another Pacific [Electronics] motor and accidentally installed in the subject (broken) motor. Either way, it is my opinion to a reasonable degree of engineering certainty that the Pacific Electronics J206 motor to the Field Controls GVD 5 vent damper failed because of an internal manufacturing defect as outlined in this report, and that this defect existed prior to the time it left Pacific Electronics' factory and Field Controls' assembly plant. The failure of the Pacific Electronics J206 motor to the Field Controls' GVD 5 vent damper in turn caused the heating system to shut down, and, the pipes to freeze and burst, resulting in extensive water damage through the Chapin home.

Doc. No. 104-6 at 19. This opinion derives in large measure from his treatment of the comparison motor as an exemplar and his conclusion that neither motor was changed post-manufacturing.

Drawing all reasonable inferences in Arbella's favor, a jury could accept Certuse's conclusion that differences in the motors existed when they left the defendants' facilities and that these differences constituted manufacturing defects which led to the failure of the motor. These inferences and conclusions, as well as the evidentiary foundations upon which they rest, are not the only permissible conclusions from the evidence, but they are permissible conclusions on the record before the Court. Thus, the Court finds that the expert opinions offered by Arbella are sufficient under Rules 104 and 702 and therefore, the motion in limine, Doc. No. 92, is DENIED.

---

[2] Implicit in the expert's opinion is the conclusion that the size difference between the parts in the two motors is not due to the possible effects of operating conditions, such as temperature, humidity, age, or general wear and tear.

Accordingly, the Court finds that Arbella has set forth sufficient evidence to present a genuine dispute of material fact as to whether the motor manufactured and sold by the defendants "differ[ed] from identical products issued from the same manufacturer," Wasylow, 975 F. Supp. at 377, thus "subject[ing] a user to an unreasonable risk of injury." Colter, 525 N.E.2d at 1313. Additionally, though "it is incumbent upon the plaintiff to show that the instrumentality had not been improperly handled by himself or by intermediate handlers," Corsetti, 483 N.E.2d at 805-06, the fact that the motor was covered by two protective layers and Certuse's conclusions are sufficient to present a genuine issue of material fact as to that question as well. Based on the evidence, a reasonable jury could find that the motor had a manufacturing defect which made it unreasonably dangerous and that such a defect is attributable to the negligence of one or both defendants.

B. Breach of Warranty of Merchantability Claim Based on Manufacturing Defect

"[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Mass. Gen. Laws ch. 106, § 2-314(1).[3] The Supreme Judicial Court of Massachusetts ("SJC") has held that

> [a] seller breaches its warranty obligation when a product that is defective and unreasonably dangerous for the ordinary purposes for which it is fit causes injury. "Ordinary purposes" refers to a product's intended and foreseeable uses. "Fitness" is a question of degree that primarily, although not exclusively, concerns reasonable consumer expectations. Both "ordinary purposes" and "fitness" are

---

[3] (2) Goods to be merchantable must at least be such as
    (a) pass without objection in the trade under the contract description; and
    (b) in the case of fungible goods, are of fair average quality within the description; and
    (c) are fit for the ordinary purposes for which such goods are used; and
    (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
    (e) are adequately contained, packaged, and labeled as the agreement may require; and
    (f) conform to the promises or affirmations of fact made on the container or label if any.
Mass. Gen. Laws ch. 106, § 2-314(2).

concepts that demand close attention to the actual environment in which the product is used.

Haglund v. Philip Morris, Inc., 847 N.E.2d 315, 322 (Mass. 2006).  With respect to the implied warranty of merchantability, Massachusetts law imposes strict liability[4] on

> [o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property . . . for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> > (a) the seller is engaged in the business of selling such a product, and
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402A (1965).  "A product may be defective and unreasonably dangerous because of a manufacturing defect, a design defect, or a warning defect, that is, a failure reasonably to warn of the product's foreseeable risks of harm."  Evans v. Lorillard Tobacco Co., 990 N.E.2d 997, 1010 (Mass. 2013).

In Massachusetts products liability, negligence and breach of warranty of merchantability are somewhat intertwined.  "A defendant in a products liability case in this Commonwealth may be found to have breached its warranty of merchantability without having been negligent, but the reverse is not true.  A defendant cannot be found to have been negligent without having breached the warranty of merchantability."  Hayes v. Ariens Co., 462 N.E.2d 273, 275 (Mass. 1984), abrogated on other grounds by Vassallo v. Baxter Healthcare Corp., 696 N.E.2d 909 (Mass. 1998).

---

[4] "Amendments to the Massachusetts version of the Uniform Commercial Code make it clear that the Legislature has transformed warranty liability into a remedy intended to be fully as comprehensive as the strict liability theory of recovery that has been adopted by a great many other jurisdictions."  Back v. Wickes Corp., 378 N.E.2d 964, 968 (1978).  "The Legislature has made the Massachusetts law of warranty congruent in nearly all respects with the principles expressed in Restatement (Second) of Torts s 402A (1965)."  Id. at 969.

Given the interrelated nature of the claims, the Court finds that because there is a genuine dispute of material fact as to the negligence claim, there is also such a dispute as to the breach of warranty of merchantability claim. Whether the product was defective and whether it was unreasonably dangerous are questions for trial, for the same reasons expressed above.

However, one more point bears mention. At the hearing, both defendants argued that they were not on fair notice of the potential breach of warranty claim based on the complaint and that the Court should dismiss this claim on that basis. While the Court considers seriously the requirements of fair notice, it finds that given the interrelated nature of negligence and breach of implied warranty of merchantability claims in Massachusetts, fair notice of the former in this case (proceeding as it is on the very same evidence) provided fair notice of the latter. While the complaint in this case was at best sparse, the defendants conceded at the hearing that they were on fair notice of Arbella's claim of a manufacturing defect sounding in negligence. The SJC has been unequivocal that "[a] defendant cannot be found to have been negligent without having breached the warranty of merchantability." Hayes, 462 N.E.2d at 275. Accordingly, the Court denies summary judgment on the breach of implied warranty of merchantability claim insofar as it is premised on a manufacturing defect theory.

C. Failure to Warn Claims

With respect to a negligence claim, "a manufacturer of a product, which the manufacturer knows or should know is dangerous by nature or is in a dangerous condition, is under a duty to give warning of those dangers to persons who it is foreseeable will come in contact with, and consequently be endangered by, that product." MacDonald v. Ortho Pharm. Corp., 475 N.E.2d 65, 68 (Mass. 1985) (quotation marks and citation omitted). "A failure to give adequate warnings, however, will not establish negligence where the lack of such warnings is not the

proximate cause of a plaintiff's injuries." Pub. Serv. Mut. Ins. v. Empire Comfort Sys., Inc., 573 F. Supp. 2d 372, 378 (D. Mass. 2008). Alternatively, a plaintiff may pursue a claim that the seller breached the implied warranty of merchantability under a theory that the product lacked adequate warnings. Under this theory, strict liability is imposed when the product is found to be unreasonably dangerous due to "a warning defect, that is, a failure reasonably to warn of the product's foreseeable risks of harm." Evans, 990 N.E.2d at 1010. However, the alleged defective (or nonexistent) warning must still be the cause of the plaintiff's injury, even under a breach of warranty of merchantability theory. Restatement (Second) of Torts § 402A.

At the hearing, counsel for Arbella argued that because the vent damper and motor came with no warnings whatsoever, both Pacific Electronics and Field Controls are liable for negligence and breach of the implied warranty of merchantability. Under either theory, Arbella would have to prove that the lack of such warnings caused the damage to the Chapins' home. At the hearing, Arbella explained the motor should have carried the warning that if it failed the heating system would not operate. At best, that is a warning that the vent damper is an essential component of the heating system.

Arbella fails to submit sufficient evidence to establish that this warning was either a cause in fact or proximate cause of any injury. Telling homeowners that various parts of their heating system are essential to the functioning of their heating system is beyond obvious—if the heating system fails, it will not produce heat. Fairly, it would also tell consumers which particular components to scrutinize or to monitor more closely. But there is no evidence in the record that such a warning would have cured any defect. Such a warning does not provide any useful information to a consumer in a way that would allow them to take reasonable precautions. Moreover, the only reasonable inference permitted by the evidence submitted is that consumers

engage heating professionals to monitor their heating systems, as the Chapins did. Such professionals know (a) that if the system fails there is no heat and (b) if the vent damper fails it precludes heating operation.[5]

In any event, the evidence shows there was some form of a warning. Field Controls submitted the Gas Vent Damper User Manual, Doc. No. 96-7, which contains a warning titled "To the user." The warning reads:

> For continued safe operation the appliance device combination should be inspected annually by a qualified service agency. It is recommended that the homeowner should have the vent system and the damper device examined annually for deterioration from corrosion or other sources. This inspection should be performed prior to and during each heating season.

Id. at 2. There is no evidence in the record from which a jury could conclude that this warning was inadequate or that any such inadequacy was causally related to the damage the Chapins' home suffered. Accordingly, no reasonable jury could find in favor of Arbella on a failure to warn theory on either the negligence or breach of implied warranty claim. The defendants' motions for summary judgment are ALLOWED to that extent.[6]

D. 93A Claim

As previously discussed, Arbella's bare-bones complaint alleged only a single count of negligence against each defendant. Doc. No. 1-1. In a footnote in each of its two oppositions to summary judgment, Arbella (for the first time) asserted that "it is entitled to recover by reason of

---

[5] If a gas vent damper stops working properly, it is designed to remain in a closed position, preventing the heat from turning on in the house. Doc. No. 115 at 5. This is required by national code. Id.

[6] At the hearing, the defendants raised serious questions about the timing of Arbella's disclosure that it intended to proceed on a failure to warn theory. Arbella asserts that based on the complaint and the applicable law, it was not precluded from doing so. Because the Court allows summary judgment on the merits of Arbella's proffered failure to warn claims, it need not reach the notice and fairness questions presented by the defendants at the hearing.

tortious injury caused by the Defendants' negligence, breach of warranty, as well as, under

M.G.L. c. 93A." Doc. Nos. 101 at 10 n.2, 103 at 10 n.2. Arbella disclaims treble damages but

does seek attorney's fees under chapter 93A. In their replies, each of the defendants argued that

Arbella could not, at this time, assert breach of warranty or 93A claims. Doc. Nos. 111, 114.

The claim for breach of the implied warranty of merchantability (premised on a manufacturing

defect theory) survives summary judgment for the reasons previously expressed. However, the

93A claim stands on different footing.

Rule 8 requires a complaint to contain a "short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement ensures that the

defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Nothing in the complaint provides fair notice

that Arbella was alleging that either defendant engaged in unfair methods of competition or

unfair or deceptive acts or practices. Mass. Gen. Laws ch. 93A § 2. Based on the complaint,

neither Field Controls nor Pacific Electronics had fair notice that Arbella was alleging unlawful

activity under 93A.

To avoid the fact that it did not expressly assert a 93A claim in the complaint, Arbella

argues that under Massachusetts law, "proof of a negligence claim is proof of a breach of

warranty, and in turn, proof of a breach of warranty is proof of a violation of M.G.L. c. 93A."

Doc. No. 118 at 2. It is true that the Supreme Judicial Court has held that "[a] defendant cannot

be found to have been negligent without having breached the warranty of merchantability."

Hayes, 462 N.E.2d at 275. However, although "'[g]enerally, a breach of warranty constitutes a

violation of [chapter 93A],' neither the Massachusetts legislature nor the Supreme Judicial Court

has gone so far as to find that all breaches of warranties are inherently deceptive or unfair."

<u>Sharp v. Hylas Yachts, LLC</u>, 872 F.3d 31, 52 (1st Cir. 2017) (quoting <u>Maillet</u> v. <u>ATF-Davidson</u> <u>Co.</u>, 552 N.E.2d 95, 100 (1990)).

The Court therefore concludes that although Arbella's negligence claim inherently includes a claim for breach of the implied warranty of merchantability, it does not, in this case, include a claim for a violation of 93A. This is particularly because the Court concludes that the defendants did not have fair notice of a possible 93A claim, based on the complaint. The chapter 93A claim fails for two further reasons. There is no evidence to support the reasonable inference that the alleged negligence or defect was unfair or deceptive. Moreover, there is no evidence in the record that Arbella satisfied the notice requirements of 93A, which require a plaintiff to send the defendant "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered" before filing a 93A claim. Mass. Gen. Laws. ch. 93A § 9(3).

For these reasons, the Court concludes that Arbella has neither sufficiently pled a 93A claim nor offered sufficient evidence, under the summary judgment standard, to establish a 93A claim. Accordingly, the defendants' motions for summary judgment are ALLOWED as to any chapter 93A claim.[7]

E. <u>Arbella's Motion to Exclude</u>

In its opposition to the motion in limine, Arbella "object[ed] and move[d] to exclude the late inclusion of the expert opinion evidence of Mr. Garner," submitted in support of Field Controls' motion. Doc. No. 106 at 2. This motion is denied because it was buried within an

---

[7] In a status report filed in November 2018, Arbella stated that it might wish to amend the complaint to add claims for failure to warn, breach of warranty, and violations of 93A. Doc. No. 80 at 2. To date, Arbella has never filed any such motion seeking to amend the complaint. To the extent Arbella wishes to amend the complaint, the time to do so has long passed.

opposition, rather than filed as a separate motion. In addition, even if considered on the merits, the motion fails. Arbella argues that Garner's "report was submitted as a rebuttal expert, when in fact it should have been submitted as a primary defense expert to the case in chief." Id. This is wrong. The initial scheduling order issued by the Court on June 8, 2016 sets one disclosure deadline for trial experts for the party with the burden of proof and another for rebuttal experts, approximately 30 days later. Doc. No. 24 at 2. While the dates in the original scheduling order were later modified, Doc. No. 60, the distinction between primary and rebuttal experts remained in effect. The expert report submitted by Field Controls with its motion in limine, Doc. No. 97-6, is properly designated as a rebuttal expert report. Accordingly, it was not, as Arbella claims, 30 days late. Finally, the Court concludes that the expert report offered by Field Controls satisfies Rules 104 and 702 of the Federal Rules of Evidence. Therefore, Arbella's motion to exclude Garner's expert report is DENIED.

F. Field Control's Motion for Summary Judgment Against Pacific Electronics

Field Controls' motion for summary judgment on its counterclaims against Pacific Electronics is DENIED. Whether either or both defendants were negligent and whether either defendant is liable to the other for contribution and indemnity are questions for trial.

IV. CONCLUSION

The motions for summary judgment, Doc. Nos. 90, 91, are DENIED IN PART AND ALLOWED IN PART, as described herein. The motion in limine, Doc. No. 92, is DENIED. The motion to exclude Field Controls' expert opinions and testimony, included in Arbella's memorandum in opposition to the motion in limine, Doc. No. 106, is DENIED. Trial in this

matter shall commence on Monday, May 20, 2019.  A scheduling order with additional pretrial deadlines will issue separately.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge